IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, ex rel., ) <br> W.A. DREW EDMONDSON, ) <br> ATTORNEY GENERAL OF ) <br> OKLAHOMA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TIM POPE, ) <br> ) <br> Defendant. ) | No. CIV-06-487-C |

MEMORANDUM OPINION & ORDER

This is an enforcement action for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.A. § 227. See 47 U.S.C. § 227(f)(1). In January 2006, Defendant retained a telecommunications company to call the homes of thousands of Oklahomans and play a prerecorded message about Oklahoma County Commissioner Jim Roth when the calls were answered. Those messages did not identify Defendant or provide his telephone number or address. The critical issues in this case are: (1) whether the TCPA's technical standards (requiring identification and contact information in calls to residences containing prerecorded messages) apply to messages of a political or non-commercial nature; and (2) if so, whether application of those requirements infringes on Defendant's First Amendment rights. (See Dkt. No. 10, Status Report, at 3.)

Plaintiff has moved for summary judgment on those questions and asks that a hearing be set to determine the appropriate penalty under § 227(f)(1). Response and reply briefs have

been filed. In the caption of his response brief, Defendant requests oral argument. The Court finds that the written submissions are more than sufficient and that argument on the legal questions raised therein is unnecessary. Therefore, Defendant's request is denied.

## STANDARD OF REVIEW

Summary judgment is proper only if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id. At the summary judgment stage, the Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994). Thus, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999); McWilliams v. Jefferson County, 463 F.3d. 1113, 1116 (10th Cir. 2006) ("In determining whether any genuine issue as to any material fact exists, evidence is to be liberally construed in favor of the party opposing the motion for summary judgment.").

FACTS

The facts of this case are not disputed at summary judgment. As indicated above, Defendant, a self-employed political consultant, retained Guardian Communications, Inc., to call and deliver the following prerecorded message to Oklahoma County residents:

> Stand by for an important message. Hear County Commissioner Jim Roth speak of his success in advancing the homosexual agenda in Oklahoma County. Including homosexual language into the county personnel handbook and fighting to keep homosexual books in the children's section of the library. Commissioner Jim Roth will discuss his role in advancing the homosexual political agenda on Monday, January 30th at 6:30 p.m. at Epworth United Methodist Church. Stand by for a one question survey. If you think that Commissioner Roth should continue using his position to advance the homosexual agenda press one, if you do not, press two. Thank you.

(Dkt. No. 10, Status Report, at 2.) Quite clearly, the message did not state the identity of the individual, business, or entity responsible for initiating the calls or its telephone number.

At least nine residents of Oklahoma County received a call at their homes containing this message. Those calls were received on the afternoon of January 29, 2006. Plaintiff has attached affidavits from those individuals, who also registered complaints with the Attorney General's Office after receiving the calls.

In accordance with 47 U.S.C.A. § 227(f)(3), Plaintiff provided notice of this action to the Federal Communications Commission ("FCC") on May 3, 2006.

DISCUSSION

The parties' briefs address the applicability of the TCPA technical requirements to residential calls containing prerecorded, non-commercial messages and First Amendment

3

issues. Defendant also raises a selective enforcement defense. These arguments are addressed below.

*A.     TCPA Requirements for Prerecorded Messages in Residential Calls*

The first issue is whether a telephone call to a residential phone line that delivers a non-commercial message using an artificial or prerecorded voice must satisfy the technical standards imposed by federal statute and proscribed by the FCC. The Court concludes that it does, but must begin its discussion with the general statutory proscription against calls to residences containing a prerecorded message.

The TCPA prohibits the initiation of "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)."[1]  47 U.S.C.A. § 227(b)(1)(B). Emergency purposes pertains to "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(3). Paragraph (2)(B) of § 227(b) provides that the Commission "may, by rule or order, exempt from the requirements of paragraph (1)(B) . . . calls that are not made for a commercial purpose" and calls made for a commercial purpose that "will not adversely affect the privacy rights that this section is intended to protect . . . and . . . do not include the transmission of any unsolicited advertisement."

---

[1] The TCPA also authorizes the FCC to establish national no-call lists whereby individuals may elect not to receive commercial sales calls, including those from an actual person rather than containing a prerecorded message.

Pursuant to this authority, the FCC has exempted residential calls using an artificial or prerecorded voice message that are not made for a commercial purpose. 47 C.F.R. § 64.1200(a)(2)(ii).

In this case, the record shows that the calls containing a prerecorded message were made without prior consent in at least nine instances and, thus, in contravention of § 227(b)(1)(B). Because these individuals complained about the calls, the Court construes their affidavits as evidence that none had previously consented to receiving the calls. Similarly, the calls were not exempt from the statutory prohibition as being made for an emergency purpose. There is simply no suggestion or support in the record that Commissioner Roth's prior actions or upcoming appearance affected the health and safety of these telephone subscribers.

Nevertheless, the calls known to have been received clearly fall within the non-commercial purpose exemption identified above. Although commercial purpose is not specifically defined, the Supreme Court's description of commercial speech as an "expression related solely to the economic interest of the speaker and its audience," <u>Central Hudson Gas & Electric Corporation v. Public Service Commission of New York</u>, 447 U.S. 557, 561 (1980), provides ample context in this case, where there is no debate about the nature of the calls. They contained prerecorded messages about County Commissioner Jim Roth's alleged support of a homosexual agenda. The parties agree, and it seems apparent, that the calls were politically motivated and not made for any commercial or economic purpose. Thus, under § 227(b)(2)(B) and 47 C.F.R. § 68.1200(a)(2)(ii), those calls, though

directed to private residences and containing a prerecorded message, were not unlawful by virtue of the recipients not having given prior consent.

However, that the calls were not themselves unlawful does not directly answer the principal question in this case. The issue is not whether Defendant could legally initiate or have those calls made, but rather, when he did, whether he was required to comply with the technical requirements applicable to all artificial or prerecorded telephone messages. Based on the clear statutory and regulatory language, and as further supported by the legislative history underlying the TCPA, the Court holds that he was.

By statute, the FCC is required to:

prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that–
    (A)    all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual; and
    (B)    any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls.

47 U.S.C.A. § 227(d)(3). The FCC adopted the statutorily-mandated requirements in 47 C.F.R. § 64.1200(b).[2]

---

[2]    All artificial or prerecorded telephone messages shall:
(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is

Defendant makes several arguments that non-commercial calls containing prerecorded messages are not subject to those requirements. First, he argues that the technical requirements do not apply because the exemption for calls made for non-commercial purposes is an exemption for purposes of *all* TCPA requirements and not simply the consent requirement in 47 U.S.C.A. § 227(b)(1)(B). Second, Defendant contends that "[t]he case law, legislative history and congressional notes do not support the proposition that the TCPA applies to First Amendment and/or political-type calls." (Dkt. No. 23, Def.'s Resp. at 4.) Third, Defendant counters that the requirement that a business or individual identify itself at the beginning of a prerecorded message cannot be given broader meaning because of the inclusion of "other entity" in that list. These arguments are without merit.

As explained above, the exemption for non-commercial calls is limited and relates strictly to the prior consent requirement. The text of the statute is unambiguous, meaning that it is not "capable of 'being understood by reasonably well-informed persons in two or more different senses.'" United States v. Quarrell, 310 F.3d 664, 669 (10th Cir. 2002)

---

responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated, and
(2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign.

47 C.F.R. § 64.1200(b).

(citation omitted).  47 U.S.C.A. § 227(b)(2)(B) allows calls not made for a commercial purpose to be "exempt from the requirements of paragraph (1)(B) of this subsection." Paragraph (1)(B) prohibits calls containing prerecorded messages to residences "without the prior express consent of the called party," unless the calls are for an emergency purpose or otherwise exempt.

The regulation also conforms to this interpretation.  There, the FCC states that no person or entity may "[i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call" is made for an emergency purpose, is not made for a commercial purpose, etc.  47 C.F.R. § 64.1200(a)(2).

In contrast, the technical requirements pertain to "all artificial or prerecorded telephone messages."  47 U.S.C.A. § 227(d)(3); 47 C.F.R. § 64.1200(b).  It is "unlawful for any person within the United States . . . to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under . . . subsection [d]. . . ."  47 U.S.C.A. § 227(d)(1)(A).  Thus, even those calls that are exempted from the prior consent requirement, such as calls for an emergency or non-commercial purpose, must comply with the technical requirements.  Because the language of the statute and regulation are clear and unambiguous, it controls.  Quarrell, 310 F.3d at 669.

However, the Court is also not persuaded that this interpretation is inconsistent with the legislative history or produces an absurd result.  Plaintiff refers to a 1991 Senate report

that includes a version of § 227 (d)(3) which requires identification of the "business" initiating a call. (Def.'s Resp. at 6.)[3] However, Public Law No. 102-243, to which the Senate report was addressed and that was codified at 47 U.S.C.A. § 227, contains the version excerpted above which refers to "the business, individual, or other entity" initiating the call. Therefore, the Court does not construe the omission of "individual" or "other entity" in the Senate report text as indicating congressional intent to exclude non-commercial calls from the technical requirements. To do so would ignore the plain language of the law as enacted as well as other portions of the Senate report that explicitly support the Court's interpretation. For instance, that same report notes that the bill "does not discriminate based on the content of the message. It applies equally whether the automated message is made for commercial, political, charitable or other purposes." S. Rep. No. 102-178, at 4 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1971.

Likewise, the Court does not agree that it is inconsistent for certain calls to be exempted from the prior consent requirement but still subject to the technical requirements. (See Def.'s Resp. at 7.) Nor does the Court agree that its (and Plaintiff's) interpretation

---

[3] The Senate Report's version of § 227 (identified there as § 228) contains the technical and procedural standards under subsection (c). Paragraph (3)(A) is the text on which Defendant relies:
> Artificial or prerecorded voice systems.–The Commissioner shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that–
> (A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the *business* initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such *business*.

S. Rep. No. 102-178, at 13 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1978 (emphasis added).

violates the rule of *ejusdem generis*. (See Def.'s Resp. at 7-8.) The statute's inclusion of "other entity" after "business" and "individual" is not being used to support any conclusion reached in this case.[4] Defendant is an individual and, as explained, was required to identify himself at the beginning of the message as the party responsible for initiating the call.

Because there is no dispute that the calls did not comply with the TCPA technical requirements and it has been decided that those requirements applied, Plaintiff is entitled to summary judgment on liability unless a genuine issue of material fact exists with respect to a defense asserted by Defendant. The Court thus turns to Defendant's First Amendment and selective enforcement arguments.

  *B.*  *First Amendment*

Defendant argues that the TCPA cannot constitutionally apply to the prerecorded message in telephone calls initiated by him because it is political speech protected by the First Amendment. (Def.'s Resp. at 12.) Defendant places considerable emphasis on the do-not-call registry component of the legislation and the Telemarketing and Consumer Fraud and Abuse Prevention Act of 1994, which are not at issue in this case. Instead, the pertinent inquiry is whether the TCPA's technical requirements – that in calls containing a prerecorded message, the caller must identify itself, provide a return phone number or address, and

---

[4] Plaintiff's actual argument is: "Also, the inclusion of the terms 'individual' and 'other entity' in addition to the term 'business' supports the notion these standards were intended for prerecorded voice messages delivered for a non-commercial purpose." (Pl.'s Br. at 4-5.)

promptly release the line after hang up – are reasonable restrictions. For the reasons explained below, the Court holds that they are.

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. However, the government may, under certain circumstances, impose restrictions even when those restrictions affect speech that contains a political message. "The extent of the government's ability to restrict protected speech on public property depends upon the nature of the forum and whether the speech restriction is content-based or content-neutral." Hawkins v. City & County of Denver, 170 F.3d 1281, 1286 (10th Cir. 1999); see also Frisby v. Schultz, 487 U.S. 474, 479 (1988). *Government* property may be categorized as (1) a traditional public forum, (2) a designated public forum, or (3) a nonpublic forum. See Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678-79 (1992); Hawkins, 170 F.3d at 1286.

Because the TCPA technical requirements apply to all calls that contain a prerecorded message to residences, regardless of the message conveyed, and a professed legislative purpose was to protect consumers from unwarranted and intrusive prerecorded calls, those requirements may be characterized as content-neutral. See Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 643 (1994) ("[L]aws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral.") Plaintiff,

relying on <u>Van Bergen v. Minnesota</u>, 59 F.3d 1541 (8th Cir. 1995)[5], contends that the lesser standard applicable to regulations of speech in nonpublic forums[6] should not apply in this case because the telephone system is not government property. (Dkt. No. 17, Pl.'s Br. at 10.) Rather, it is a *privately* created and operated, albeit heavily regulated, channel of communication.[7] Defendant makes no response on this point. The Court, without endeavoring to decide the forum issue, accepts Plaintiff's invitation to apply an intermediate level of scrutiny applicable to content-neutral restrictions that impose an incidental burden on speech. See <u>Jobe v. City of Catlettsburg</u>, 409 F.3d 261, 267-68 (6th Cir. 2005) (applying

---

[5] <u>Van Bergen</u> involved a Minnesota statute that regulated the use of automatic dialing-announcing devices, i.e., machines that can dial telephone numbers according to a pattern or as programed and deliver a recorded message when the call is answered.

[6] In a nonpublic forum, the government has much greater latitude to restrict protected speech. The law draws no distinction between content-neutral and content-based restrictions in a nonpublic forum. Provided the restriction is reasonable in light of the purpose served by the forum and is "not an effort to suppress expression merely because public officials oppose the speaker's view," it does not violate the First Amendment.

<u>Hawkins</u>, 170 F.3d at 1287 (citation omitted).

[7] In <u>Van Bergen</u>, the Eighth Circuit rejected the district court's finding that the telephone system is a limited public forum. 59 F.3d 1553. It noted that the system was privately-owned, not governmentally-created, and had none of the hallmarks of the public forum. <u>Id.</u> "The telephone system, at least [in 1995], is not primarily a conduit for public forum activity. The primary use of the telephone is for personal business, family and social activities, and the telephone is primarily a device for private communication between only two persons at a time." <u>Id.</u> Still, the court determined that intermediate scrutiny was appropriately applied to content-neutral restrictions placed on speech in such private fora. "In private fora, the government is . . . permitted only to apply time, place or manner restrictions because these fora are presumptively the province of those who own and occupy them, and the choice of what speech to permit and what to reject is the private property owner's, not the government's." <u>Id.</u> at 1553 n.11.

traditional time-place-manner test to ordinance that prohibited leafleting on privately-owned cars parked on public streets), cert. denied, ___ U.S. ___, 126 S.Ct. 389 (2005).

Content-neutral restrictions on the time, place, or manner of speech are acceptable if they are narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information. Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); Frisby, 487 U.S. at 481-82; Doctor John's, Inc. v. City of Roy, 465 F.3d 1150, 1164 (10th Cir. 2006). "Narrowly tailored" does not require the least restrictive means available to accomplish the objective, but only that "'the . . . regulation [or legislation] promotes a substantial government interest that would be achieved less effectively absent the regulation' and does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" Wells v. City & County of Denver, 257 F.3d 1132, 1148 (10th Cir. 2001) (quoting Ward, 491 U.S. at 799).

Plaintiff claims that the governmental interest furthered by the TCPA requirements is the protection of residential privacy. (Pl.'s Br. at 10.) The Court finds that interest to be substantial and supported by legislative history. See Hill v. Colorado, 530 U.S. 703, 717 (2000) ("The right to avoid unwelcome speech has special force in the privacy of the home . . . .").

In addition, the Court finds that the TCPA's technical requirements for calls containing prerecorded messages to homes allow people receiving those calls to contact someone regarding future calls and to have use of their telephone line after hangup. Those protections do not prevent all unwanted telephone intrusions but clearly are designed to

remedy the underlying problems previously experienced with anonymous prerecorded message calls. Thus, the technical requirements curtail no more speech, or compel no more speech, than is necessary to accomplish their purpose.

Further, those minimal requirements imposed only incidental restrictions on Defendant's ability to spread his message. Specifically, Defendant was not prohibited from calling residences, even uninvited. He could have called himself or employed live operators, or he could have used a prerecorded message so long as he identified himself and provided contact information enabling someone uninterested in receiving repeat calls to register that wish. The imposition on Defendant cannot be characterized as anything more than de minimis when considered in context – that thousands of Oklahomans may have received uninvited calls on their home phones that contained a prerecorded, politically-oriented message with no information about its source or how to avoid subsequent intrusions.[8]

---

[8] In an apparent facial challenge to the TCPA technical standards as compelling speech (i.e., self-identification) in violation of First Amendment protections, Defendant likens the prerecorded message about Commissioner Roth's upcoming speaking engagement in calls to Oklahoma homes to the anonymous pamphlets, leaflets, brochures, and books recognized in Talley v. California, 362 U.S. 60, 64 (1960), as having "played an important role in the progress of mankind." In Talley, a Los Angeles ordinance that prohibited the distribution of handbills "'in any place under any circumstances'" that did not contain the names and address of persons who prepared, distributed, or sponsored them was declared void on its face. Id. at 61 (citing ordinance). Influential in that case was the fact that the ordinance was in no way limited to the purported purpose of identifying "those responsible for fraud, false advertising and libel." Id. at 64. It prohibited distribution of all anonymous handbills. In addition, in support of its decision, the Court identified two prior cases that held that states could not compel public identification of group members "engaged in the dissemination of ideas" because "identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance." Id. at 65.

With respect to that last rationale, no such concern has been voiced here. Further, the traditional privacy interest recognized in one's home and the nature of the intrusion (an unsolicited, prerecorded call as opposed to a handbill that might be received and quickly discarded) distinguish the facts of this case from Talley. To the extent that having a phone is an invitation to receive calls,

Thus, the Court finds that the TCPA's technical requirements are narrowly tailored and alternative modes of communication remained open. Accordingly, the Court holds that the TCPA identification requirements survive scrutiny and do not, as applied in this case, violate Defendant's First Amendment rights.

### C.   *Selective Enforcement*

Finally, Defendant contends that he has been singled out for political reasons and that dozens of others have made similar calls in the past without Plaintiff initiating an enforcement action. However, beyond attorney allegations, there is no evidence submitted to support Defendant's claims. Thus, his argument is not entitled to further consideration at summary judgment.

## CONCLUSION

Accordingly, Plaintiff's motion (Dkt. No. 16) is GRANTED. Plaintiff is granted partial summary judgment on the questions presented. A hearing to address Plaintiff's request for an injunction and damages under § 227(f)(1) will be placed, in lieu of the previously scheduled trial, on the February trial docket. Plaintiff is instructed to file a brief

---

it is a limited one.

       There is no question that a First Amendment right not to be forced to speak and a public interest in encouraging discussion of matters of public concern exist, but those should not be overextended. "There simply is no right to force speech into the home of an unwilling listener." Frisby, 487 U.S. at 485. Calls containing an anonymous prerecorded message, especially when a phone line is not promptly released upon hang up, would threaten to do just that. A person receiving that call would have no possible recourse or means to avoid other calls from that caller. Thus, the Court finds that the analysis undertaken and conclusion reached above are warranted.

in support of its request on or before January 22, 2007. Defendant will have eighteen days to respond.

    IT IS SO ORDERED this 9th day of January, 2007.

_/s/ Robin J. Cauthron_
ROBIN J. CAUTHRON
United States District Judge